# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8006 | **DATE** | March 19, 2004 |
| **CASE TITLE** | ISRAEL vs. POTTER et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is granted. Plaintiff's motion for Rule 52(c) judgment is denied. Any pending motions are moot.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | MAR 22 200 | |
| W | Notified counsel by telephone. | | date docketed | |
| W | Docketing to mail notices. | | | 56 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3-19-04 date mailed notice | |
| JS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Isaiah Israel,

    Plaintiff,

v.

No. 02 C 8006

John E. Potter, Postmaster General of the
United States Postal Service,

    Defendant.

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On May 1, 2003, plaintiff Isaiah Israel ("Israel") filed a second amended complaint, which this court accepted on May 2, 2003, against defendant John E. Potter ("Potter"), Postmaster General of the United States Postal Service ("USPS"), alleging race discrimination, in violation of 42 U.S.C. § 2000e-2(a)(1), and retaliation, in violation of 42 U.S.C. § 2000e-3(a). On January 8, 2004, Potter moved to dismiss Israel's complaint or alternatively for summary judgment. Because it appears the parties have done so and because this court has considered the material submitted and has not restricted its review to the face of the complaint, this court will address Potter's motion exclusively as one for summary judgment under Federal Rule of Civil Procedure 56. Having considered this matter fully, for the reasons stated herein, Potter's motion for summary judgment is granted.

1



## STATEMENT OF FACTS[1]

Viewing all facts in the light most favorable to Israel and construing all ambiguities in his favor, Israel, an African American male, worked as a clerk with the USPS from 1990 until he retired in December 2001. In 1993, Israel filed an administrative complaint alleging discrimination on the part of his supervisor Kevin Haywood ("Haywood"), an African American, for allegedly removing

---

[1] The Statement of Undisputed Facts is drawn from Potter's "Local Rule 56.1 Statement of Material Facts" and Israel's "Rebuttal to defendants [sic] 56.1 statement." In addition, this court has considered relevant portions of Israel's "Rebuttal" as a statement of additional facts and has reviewed Potter's response to these additional facts, which Potter labels as "Reply to Plaintiff's Response to Defendant's Statement of Material Facts."

Although Israel is pro se, and thus not held to the stringent standard expected of lawyers, this court notes that he received, as required by the Local Rules and admitted in open court on March 16, 2004, the Local Rule 56.2 Notice describing to him how to respond to Potter's Rule 56.1(a) statement. (Dkt. No. 45.) Israel's "Rebuttal" clearly does not comply with Rule 56.1. First, he does not respond to each statement individually. Second, his responses are primarily argumentative. See Malec v. Sanford, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("[A] Rule 56.1(b)(3)(A) response is not the place for purely argumentative denials."). Such argument has been disregarded and does not controvert the fact alleged. Third, his responses are not brief, with some running as many as three full pages; nonetheless, this court has considered them. Fourth, he includes additional facts but does not set them forth in short, numbered paragraphs. See L.R. 56.1(b)(3)(B). Because he is pro se, however, to the extent relevant, this court has considered the additional facts. Fifth, and most importantly, Israel does not, in most instances, provide citations to the record when he disputes one of Potter's statements of fact. Consequently, many of the facts set forth by Potter have been deemed admitted. L.R. 56.1(b)(3)(B). Sixth, often when Israel does controvert a fact and provide a citation, the document to which he cites is not attached nor found anywhere in the materials submitted, and thus the fact has been deemed admitted. The record Israel wants this court to review must be provided to this court. For example, no exhibit to which Israel cites as "I.R." was filed and thus was not available to this court to be considered.

Finally, plaintiff does not attach a separate affidavit but does declare under penalty of perjury that his "Rebuttal" is true and correct. Therefore, pursuant to 28 U.S.C. § 1746, this court has considered certain statements as if set forth in a separate, attached affidavit. However, and quite important, Israel cannot create issues of fact by submitting sworn statements that contradict his prior deposition testimony. When inconsistent, and if no explanation was given for the inconsistency, this court has considered only Israel's deposition testimony. See Beckel v. Wal-Mart Assocs., Inc., 301 F.3d 621, 623-24 (7th Cir. 2002) ("Affidavits, though signed under oath by the affiant, . . . when offered to contradict the affiant's deposition are so lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy.").

2

Israel's workplace stool. Israel did not pursue this administrative complaint. In May 1997, Israel filed a complaint with the Equal Opportunity Employment Opportunity Commission ("EEOC") claiming that race discrimination was the reason Jasper Grimaudo ("Grimaudo") issued Israel a seven-day suspension for failing to maintain a regular work schedule.[2] Israel also filed another

---

[2] Israel spends about three full pages responding to this fifth paragraph of Potter's 56.1(a) statement. Unfortunately, his response is all irrelevant. The only relevance of the May 1997 suspension, and the 1993 Haywood incident, is to show that Israel had engaged in protected activity with respect to Grimaudo and Haywood prior to the alleged incidents of retaliation against Israel. The May 1997 suspension is not before this court, so Israel's arguments about forged signatures and excuses for being late are not relevant to the seven claims of employment discrimination before this court at this time. Furthermore, the December 12, 1998, incident, described in the following sentence of the body of this opinion, between Israel and Grimaudo involving a stool at work is relevant for the same limited purpose discussed above and will not be considered for any other purpose. This incident is addressed in detail in Israel's "Memorandum in Support of denial of Summary Judgment." This court has not considered additional factual allegations in the memorandum that are not part of Israel's L.R. 56.1 response.

Israel spends considerable time discussing the May 1997 suspension and the December 1998 emergency placement. However, he has provided no evidence that these incidents were filed with the EEOC and more importantly that he ever received a right to sue letter related to them. "It is well-established that before filing a lawsuit under Title VII, a plaintiff must (1) timely file a charge with the EEOC, and (2) receive a right to sue letter from the EEOC." Zugay v. Progressive Care, S.C., 180 F.3d 901, 902 (7th Cir. 1999). Israel asserts numerous times in his memorandum that because he talked about these incidents at the EEOC hearing on August 30, 2002, he pursued them and the EEOC considered them. Israel is incorrect. ALJ Winston Jackson made clear that the issues before him would be limited to the seven described in the body of this opinion and enumerated by ALJ Jackson at the August 30, 2002, hearing. (Def.'s Exs. in Supp., Ex. 2 at 5.) ALJ Jackson stated that other than the seven issues, "[n]o other claims are accepted. All other allegations will be addressed solely as background evidence." (Id.) Therefore, although discussed at the EEOC hearing, the 1997 and 1998 incidents were not considered substantively. In fact, at the hearing, Israel's counsel, talking about the 1998 chair incident and responding to a relevance objection, stated that "[w]e are not seeking relief but we seek to show evidence of a pattern by Grimaudo." (Id. at 51.) Because the 1997 and 1998 incidents were not before the EEOC and because Israel was not issued a right to sue letter for these claims, they are not before this court and have not been considered except for the limited purpose with respect to protected activity explained above.

Perhaps most importantly, Israel alleges in his Second Amended Complaint that "[t]he defendant discriminated against the plaintiff on or about or beginning on or about 8/25/99." (Sec. Am. Compl. ¶ 6.) Consequently, even if Israel was issued a right to sue pertaining to the 1997 and 1998 incidents, he states that the discrimination did not begin until August 25, 1999.

3

administrative complaint against Grimaudo in December 1998 claiming that Grimaudo ordered Israel to move his workplace stool.

In August 1999, Israel filed further administrative claims against Haywood and Grimaudo. These complaints were consolidated and proceeded to a hearing before EEOC administrative law judge ("ALJ") Winston Jackson on August 30, 2002. The hearing was restricted to seven incidents, which will be discussed below. ALJ Jackson found that Israel was neither discriminated against nor retaliated against.

On August 19, 1999, Israel's supervisor Jesse Parham ("Parham"), an African American, ordered Israel to report to work at Building 10 at the Chicago Bulk Mail Facility. Israel was not the only USPS employee ordered to report to work at Building 10, and the USPS routinely assigned employees to work at that location, based on personnel requirements. However, on that date, Israel questioned[3] Parham's order. Israel believed that employees with less seniority than him should have been required to report to Building 10 instead of him. United States Postal Standards of Conduct require a USPS employee to follow a supervisor's order; if the employee questions or disagrees with the order, the employee must grieve the order to his or her union at a later time. Although Israel questioned the order from Parham, and presumably violated USPS rules by doing so, he was only threatened with disciplinary action and not actually disciplined. In addition, Israel had not filed an administrative complaint against Parham prior to August 1999.

On August 25, 1999, supervisor Haywood ordered Israel to report to work at Building 10. Israel again questioned this assignment order. Consequently, Israel was placed on emergency off-

---

[3] With respect to all of the incidents involving Building 10, this court has accepted Israel's contention that he merely questioned, and never refused, his supervisors' orders to report to this Building.

4

duty (non-pay) status. However, the discipline was later rescinded through the union grievance process, and Israel received back pay for the time he was on emergency status.

Later, in September 1999, Haywood again ordered Israel to report to work at Building 10. Israel once again questioned this order. On October 2, 1999, Israel's immediate supervisor, Chris Stubblefield ("Stubblefield"), an African American male, issued Israel a letter of warning for Israel's failure to report to work as ordered by Haywood. Israel grieved this disciplinary letter to the union, but the discipline was upheld.

In February 2000, supervisor Zelma Skillom ("Skillom"), an African American female, issued Israel a seven-day suspension for taking unauthorized 15-minute breaks during every hour of his work shift. Israel's union contract only allowed him two 15-minute rest breaks and a half-hour lunch period during his work shift.[4] Israel claims that he was told by William Walker ("Walker"), who was informed by labor relations specialist Arthur Reed ("Reed"), that employees could take the 15-minutes rest periods every hour to keep employees from injuring themselves. Israel admits that

---

[4] Israel testified at his deposition that the union contract provided for two 15-minutes rest breaks and one half-hour lunch period. (Def.'s Exs. in Supp., Ex. 1 at 85.) Israel argues that he was told, and a Memorandum of Understanding stated, that he could take a 15-minute break every hour. In support of this, Israel has attached a Collective Bargaining Agreement ("CBA") between the American Postal Workers Union, AFL-CIO and the U.S. Postal Service in effect from November 21, 1998, to November 20, 2000. (Pl.'s Appx., Ex. 1 "Old Contract.") This CBA does not clearly support Israel's position. In fact, the Memorandum of Understanding states: "It is not the intent of this agreement to add to existing breaks or change any system that is currently acceptable to the parties." (Id. at 360-61.) Thus, Potter's statement regarding breaks, which Israel subsequently confirmed at his deposition, is not in dispute. It appears from a review of the few materials submitted on this issue that employees were allowed to periodically rotate out of jobs requiring keying but were still required to perform other non-keying job tasks. However, as will be explained in the body of this opinion, any dispute about breaks does not matter and has no impact on the outcome of Israel's claim.

he never filed an administrative complaint against Skillom prior to February 2000. After grieving the suspension to his union, Israel's suspension was upheld.

In January 2001, Israel accepted a light duty assignment with the USPS. On February 8, 2001,[5] Israel stopped coming to work. On March 12, 2001, Israel received a letter from supervisor Eugene Stancil ("Stancil") asking Israel to explain his absences from work since February 8, 2001. This letter also advised Israel that he would be terminated due to being AWOL unless he submitted appropriate medical information or immediately reported back to work. Prior to this letter, Israel had not filed an administrative complaint against Stancil. Later in 2001, Israel took disability retirement and was not terminated.

Finally, Israel claims that he was denied continuation of pay ("COP") payments for a period of time after January 1, 2001.[6] He claims he was denied such benefits as a result of Celestine Johnson's ("Johnson"), an African American female, retaliation against Israel for filing an EEOC claim against her. However, Israel had not filed an EEOC claim against Johnson prior to January 1, 2001.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[5] Paragraph 28 of Potter's statement of facts lists the date as February 8, 2000. However, in looking at Israel's deposition and his response to this statement, it is clear that the year in question is 2001.

[6] Again, in a recurring problem, Potter has 2000 as the year. As Israel admits, the year at issue is 2001.

of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat a motion for summary judgment; the nonmoving party must identify with reasonable particularity the evidence upon which that party relies. Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 898 (7th Cir. 2003); Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The evidence relied upon must be competent evidence of a type otherwise admissible at trial. Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002).

## ANALYSIS

Israel advances two claims. First, he asserts that the USPS discriminated against him because of his race. Second, Israel claims that the USPS retaliated against him after he complained to the EEOC. These will be discussed in turn. Prior to addressing the merits of Israel's claims, however, this court must clarify what is properly before it. Only the claims specified in the October 7, 2002, "Notice of Final Action," which was attached to Israel's original complaint, are before this court. All other claims are time-barred or have not been filed with the appropriate administrative agency. Therefore, the following seven instances of alleged discrimination and/or retaliation will be

7

addressed below: (1) on August 19, 1999, Israel was threatened with disciplinary action and removal; (2) on August 25, 1999, Israel was placed in an emergency off-duty status; (3) on October 2, 1999, Israel was issued a letter of warning; (4) on February 20, 2000, Israel was issued a notice of a seven-day suspension; (5) on March 12, 2001, Israel was threatened with termination; (6) Israel was determined to be off work without medical documentation; and (7) on March 9, 2001, Israel's COP was denied. These were the same issues before the EEOC administrative law judge on August 30, 2002. (Def.'s Exs. in Supp., Ex. 2 at 5.) Although Israel spends considerable time discussing other incidents, for example, the May 1997 and December 1998 incidents with Grimaudo, this court cannot consider claims other than those presented to the EEOC in August 2002 and specified in the "Notice of Final Action." Accordingly, all claims in the second amended complaint other than the seven enumerated claims described above are dismissed.

I. Race Discrimination

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer such as the USPS "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). Israel may prove intentional employment discrimination under Title VII by using either the "direct method" or "indirect method." Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 938 (7th Cir. 2003).

The direct method of proof permits a plaintiff like Israel to show, through either direct evidence or circumstantial evidence, that his employer's decision to take an adverse job action against him was motivated by an impermissible purpose, such as race. Id. at 938-39. The Seventh Circuit has explained that "[d]irect evidence is evidence which if believed by the trier of fact, will

prove the particular fact in question without reliance on inference or presumption." Walker v. Glickman, 241 F.3d 884, 888 (7th Cir. 2001) (quoting Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir.1999)). In addition, Israel can prevail under the direct method of proof by presenting circumstantial evidence that "point[s] directly to a discriminatory reason for the employer's action." Adams, 324 F.3d at 939.

In the case at hand, Israel does not appear to proceed under the direct method. He does not point to any direct evidence or circumstantial evidence. In fact, Israel addresses the prima facie case under the indirect method, and thus, apparently seeks to establish race discrimination under this method.

Under the indirect method, i.e., the familiar McDonnell Douglas framework, Adams, 324 F.3d at 939, Israel must establish a prima facie case of race discrimination. If he establishes a prima facie case, the burden of production shifts to Potter to articulate a legitimate, non-discriminatory reason for the USPS's employment action. If Potter meets this burden, Israel may rebut the evidence by showing that Potter's proffered non-discriminatory reason is a pretext for discrimination or that the decision was tainted by impermissible, race-based motives. Johnson, 325 F.3d 892 at 897. In order to establish a prima facie case of race discrimination, Israel must prove that: (1) he was a member of a protected class; (2) he was performing his job to the USPS's satisfaction; (3) he suffered an adverse employment action; and (4) similarly situated employees who were not members of the protected class were treated more favorably by the USPS. Id. In order to survive the Potter's motion for summary judgment, Israel is required to demonstrate a triable issue as to each element of the prima facie case. Griffin v. Potter, 356 F.3d 824, 828 (7th Cir. 2004). Potter does not dispute that Israel satisfies the first prong of the prima facie case.

9

Potter does argue that Israel cannot establish that he was performing his job to USPS's satisfaction. Potter claims that by questioning supervisors' orders, instead of complying with the orders and then filing grievances as required by USPS standards, and not following break and work schedules, Israel was not performing satisfactorily. Potter does not cite to any case law in support of this position, and Israel addresses this prong of the prima facie case by citing to inapplicable decisions by Illinois state courts. Clearly, USPS employees were expected to follow supervisors' orders and comply with work schedules. Israel did not do so and thus may not have been performing to the USPS's satisfaction. However, because the parties did not fully address this point and because several other grounds exist on which to grant summary judgment, this court need not determine this issue.

With respect to the third prong of Israel's prima facie case, the Seventh Circuit has held that "[a] materially adverse employment action is something 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Rhodes v. Ill. Dep't of Transp., 359 F.3d 498, 504 (7th Cir. 2004) (quoting Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993)). It must "significantly alter[] the terms and conditions of the employee's job . . . ." Griffin, 356 F.3d at 829. For purposes of Title VII, an adverse employment action is a significant change in the plaintiff's employment status such as hiring, discharge, denial of promotion, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits. Rhodes, 359 F.3d at 504. With this standard in mind, this court will analyze each claim before the EEOC to determine whether it constitutes an adverse employment action. First, the August 19, 1999, threat of disciplinary action was just that–merely a threat. No job action whatsoever was taken against Israel. Second, although Israel was placed on emergency off-duty

status on August 25, 1999, he admitted that after he filed a grievance he received back pay for the time off. Consequently, because Israel ultimately received full compensation for the time spent in emergency off-duty status, he suffered no adverse employment action. Third, it is not clear what impact the letter of warning had on Israel's employment status, but no evidence suggests that it had any immediate impact on his benefits. A letter of warning, as part of a progressive discipline system, is not an adverse employment action. Oest v. Ill. Dep't of Corr., 240 F.3d 605, 613 (7th Cir. 2001); see also Griffin, 356 F.3d at 829 (finding that a letter of warning issued by the USPS does not constitute an adverse employment action). Fourth, the *threat* of termination and letter requiring medical documentation were not adverse employment actions. Ultimately, Israel was not terminated. He, in fact, retired.[7] Finally, the seven-day suspension without pay and denial of COP benefits were, at least arguably, adverse employment actions. As to these claims, along with the other five, however, Israel cannot satisfy the fourth prong of the prima facie case.

With respect to the seven-day suspension, Israel admitted at his deposition that as far as he knew he was the only employee taking 15-minute breaks every hour. (Def.'s Exs. in Supp., Ex. 1 at 89.) He cannot point to a non-African American employee who took 15-minute breaks every hour and who was not suspended for doing so. Consequently, this claim fails.

In regards to the COP benefits, in response to Potter's motion, Israel has not identified a similarly situated non-African American who was treated more favorably than him, i.e., actually

---

[7] Israel argues, without any factual support, that he was constructively discharged. (Pl.'s Mem. at 21, 28.) This claim, however, is not alleged in Israel's Second Amended Complaint and thus is not before this court. Israel cannot amend his complaint through allegations made in response to a motion for summary judgment. Grayson v. O'Neill, 308 F.3d 808, 817 (7th Cir. 2002). Moreover, nothing in the materials before this court suggests that Israel was forced to retire because he was subjected to working conditions that a reasonable person would find unbearable. Griffin, 356 F.3d at 830.

11

granted COP benefits under similar circumstances. The parties spend time arguing about whether the USPS is responsible for COP benefits, particularly for the first 45 days, and whether a court can review the denial of COP benefits. However, all of this is really irrelevant here. Israel is not directly challenging the COP decision; rather, he alleges race discrimination and must show that he was denied COP benefits because of his race. This court will not decide whether the COP benefits should have been granted or denied. The only issue before this court is whether the benefits were denied because Israel is an African American or in retaliation for his prior EEOC charges. Because Israel will not be able to establish that a similarly situated non-African American was granted COP benefits under similar circumstances, he cannot establish a prima facie case of race discrimination.[8]

Although not adverse employment actions, for the sake of completeness, this court will address the 1999 Building 10 incidents. In response to Potter's arguments regarding those incidents, Israel can point to no similarly situated employees outside of his protected class who were treated more favorably than him. In his memorandum, Israel claims that employees with less seniority than him were not required to report to Building 10 (but does not state their races) and lists "Mr. Ghuman" as a person not ordered to go Building 10. (Pl.'s Mem. at 20.) Notwithstanding that this "fact" is not included in Israel's 56.1 material, it is clear that Ghuman was not similarly situated to Israel. At the EEOC hearing, Israel testified that supervisors were requiring relatively more senior employees like him to go to Building 10 instead of juniors or part-time flexees or casuals. He named Ghuman as being in one of these classes of employees. (Def.'s Exs. in Supp., Ex. 2 at 21.) Therefore, Ghuman was not similarly situated to Israel. Ghuman had less seniority or was in a

---

[8] Israel spends a lot of time arguing about disabilities and disability-related benefits. This court wants to clarify that Israel has not alleged a disability-related discrimination claim.

12

different job classification than Israel. To carry his burden, Israel must point to a non-African American with similar seniority who was not required to report to Building 10 when Israel was. Israel has not made this prima facie showing with respect to any of his claims. Consequently, Potter is entitled to summary judgment in its favor.

Even if Israel could establish a prima facie case, Potter has advanced legitimate non-discriminatory reasons for the USPS's decisions. First, with respect to the Building 10 incidents in 1999, Israel questioned supervisors' orders in violation of USPS standards. Israel was required to follow the orders and later file grievances if he disagreed with the orders. Second, as to the seven-day suspension, Israel refused to follow a supervisor's order to refrain from taking the breaks. Again, even if the order was wrong, USPS standards compelled Israel to follow it and later file a grievance. Third, the letter threatening termination and requiring medical documentation was issued because Israel missed work without an excuse. Finally, the USPS determined that Israel did not qualify for COP benefits, based on the documents Israel submitted. Each of these is a legitimate, non-discriminatory reason for USPS's actions.

As such, Israel now must come forward and show that these reasons were pretext for race discrimination. He has not done so. As to pretext, Israel raises the alleged forgery by Grimaudo, which, as this court explained earlier in this opinion, is irrelevant to the pending race discrimination claims. Israel also asserts, in conclusory fashion, that Johnson sent Israel's doctor fictitious and misleading paperwork which caused the benefits to be denied. (Pl.'s Mem. at 21.) Israel provides no evidence to support his position. Therefore, because Israel cannot establish that the USPS's legitimate, non-discriminatory reasons are pretextual, summary judgment must be granted in Potter's favor.

II.  Retaliation

Title VII prohibits an employer from discriminating against an employee because that employee "has opposed any practice made an unlawful employment practice by [Title VII] or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Israel may establish a prima facie case of retaliation and defeat Potter's motion for summary judgment using either the direct method or the indirect method. Hilt-Dyson v. City Of Chicago, 282 F.3d 456, 465 (7th Cir. 2002). Under the direct method, Israel must present direct evidence of (1) a statutorily protected activity; (2) an adverse action taken by the employer; and (3) a causal connection between the two. Rhodes, 359 F.3d at 508.

As explained above, the only instances of adverse action relate to the seven-day suspension and denial of COP benefits. First, Israel had not, prior to the suspension, ever filed an EEOC complaint against Skillom, the woman who issued the suspension. Israel argues, however, that the real person behind his suspension was Grimaudo. (Pl.'s Mem. at 22.) Israel fails to point to evidence, as opposed to his own mere speculation and conjecture, demonstrating that Grimaudo was behind the suspension or that even if he was, he did so because Israel had filed complaints against him in 1997 and 1999. The statement, "Bullshit, he is not going anywhere. Write him up." (Id.), as Israel alleges Grimaudo said prior to the suspension in reference to Israel, does not evidence that Grimaudo prompted Skillom to suspend Israel or that the suspension was based on prior complaints against Grimaudo. Second, Israel had never filed an EEOC complaint against Johnson prior to the denial of the COP benefits. In response to the Potter's argument, Israel has failed to demonstrate any causal connection between any prior EEOC complaint and his denial of COP benefits. Because

14

Israel cannot show that any job discipline from 1999 to 2001 was causally linked to any prior protected activity, he must proceed under the indirect method.

However, Israel's claims fare no better under this method. Under the indirect method, Israel must show that (1) he engaged in a statutorily protected activity; (2) he performed his job according to the USPS's legitimate expectations; (3) despite his satisfactory job performance, he suffered an adverse action from the USPS; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Hilt-Dyson, 282 F.3d at 465. Contrary to Potter's arguments (Def.'s Mem. at 8), under the indirect method, the Seventh Circuit has made clear that "an employee need not present proof of a 'causal link' between the protected expression in which the plaintiff engaged (as by filing a complaint about an unlawful act by his employer) and the adverse employment action of which he is complaining." Johnson, 325 F.3d at 897 (quoting Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 642 (7th Cir. 2002)). If Israel establishes a prima facie case of retaliation, the burden of production shifts to Potter to come forward with a legitimate, noninvidious reason for the USPS's adverse action. Rhodes, 359 F.3d at 508. Once Potter presents a legitimate, noninvidious reason for the adverse action, the burden remains with Israel to present evidence that Potter's reason is pretextual. Id.

This court need not spend much time on this issue. The above discussion as to Israel's race discrimination claim applies here. As explained in the race discrimination section above, Israel can arguably establish adverse job actions with respect to only two incidents. As with the race discrimination claim, Israel cannot identify any similarly situated persons who did not engage in protected activity and were treated more favorably than Israel under similar circumstances. Moreover, as previously explained, Potter has advanced legitimate non-discriminatory reasons for

the USPS's job actions. As to pretext, Israel points to no actual evidence of pretext and merely states that he will present such "powerful evidence" at trial. (Pl.'s Mem. at 24.) Trial, however, is too late. Because Israel cannot establish a claim for retaliation under either the direct or indirect method, Potter's motion for summary judgment is granted.

## CONCLUSION

In conclusion, even if Israel suffered mistreatment by the USPS, he cannot establish that the USPS took any of its actions because of Israel's race or because of his protected activity. Consequently, defendant Potter's motion for summary judgment is granted. Plaintiff Israel's motion for Rule 52(c) judgment is denied. Judgment is entered in favor of defendant Potter and against plaintiff Israel. Any pending motions are moot.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: March 19, 2004